UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS


SUSTAINABLE SOURCING, LLC,  )
            Plaintiff,      )
                            )
        v.                  )   C.A. No. 12-cv-30093-MAP
                            )
BRANDSTORM, INC.,           )
BRANDSTORM HBC, INC.,       )
and THEIRRY OLLIVIER,       )
            Defendants.     )


MEMORANDUM AND ORDER REGARDING PLAINTIFF'S
AND DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT
(Dkt. Nos. 112 & 114)

May 31, 2016

PONSOR, U.S.D.J.


I. INTRODUCTION

This case centers on the competing intellectual
property claims of two companies that sell Himalayan pink
salt.  Defendants have moved for summary judgment on Count I
(copyright infringement) and Count II (false advertising) of
Plaintiff's Amended Complaint. (Dkt. No. 112.)  Plaintiff
has moved for summary judgment on Count I and on all five
counts of Defendants' counterclaim.  (Dkt. No. 114.)

For the reasons set forth below, both parties each
deserve partial success on their motions.  The court's

rulings will leave portions of the case for further
proceedings, and a schedule for this final stage is included
at the conclusion of this memorandum.

## II. DISCUSSION

### A.  Count I - Copyright Infringement

Plaintiff alleges in Count I that Defendants violated
17 U.S.C. § 501 when they copied and used Plaintiff's
registered work.  The background may be summarized as
follows.

In 2006, Plaintiff created the photograph at the core
of the copyright dispute (the "Image") and used it in its
marketing efforts.  The Image shows a box of Plaintiff's
pink salt, surrounded by bowls of berries and salt.  One of
Defendants' employees (not surprisingly, no longer employed
by  them) foolishly copied the Image, mostly leaving the
photograph unchanged, but replacing Plaintiff's product with
a depiction of Defendants' product (the "Altered Image").
Defendants thereafter used the Altered Image in their online
and print catalogues.  It was only after Plaintiff learned
of Defendants' blatant copying that Plaintiff obtained a

2

copyright registration of the Image (Registration VA 0001812255) on May 1, 2012.

Based on these undisputed facts, which Defendants concede, Plaintiff is entitled to judgment as to liability on Count I of its amended complaint, the copyright claim. <u>Yankee Candle Co. v. Bridgewater Candle Co.</u>, 259 F.3d 25, 33 (1st Cir. 2001) (stating that "[t]o prevail on a claim of copyright infringement, the plaintiff must show both ownership of a valid copyright and illicit copying.").

Defendants' cross motion for summary judgment on Count I argues that, despite Plaintiff's success on the liability issue, they are entitled to judgment on this count because Plaintiff can show no damages flowing from the infringement. Defendants emphasize, in particular, that Plaintiff's damages are limited because Plaintiff registered the Image only <u>after</u> Defendants' copying occurred.  This omission means that  Plaintiff is precluded from an award of statutory damages or attorney's fees.  <u>See</u> 17 U.S.C. § 412.[1]

_____

[1] "[N]o award of statutory damages or attorney's fees ... shall be made for ... (2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of

On the broader question of non-statutory damages, however, the court agrees with Plaintiff that further discovery is required.  More generous access to financial information and expert discovery may reveal a basis for Plaintiff's damage claim.  In sum, Plaintiff's motion for summary judgment on Count I as to liability will be allowed, Defendants' motion on the same count as to statutory damages and attorney's fees will likewise be allowed, and discovery on non-statutory damages may proceed in accordance with the schedule set forth below.

### B.  Count II - False Advertising

Under Count II, Plaintiff alleges that Defendants have made false and misleading statements on their Facebook page to the effect that their Pakistani salt is from Tibet, which allegedly deceived customers and damaged Plaintiff's sales. Defendants seek summary judgment, stating the 2013 Facebook post is not a violation of the Lanham Act and, further, that Plaintiff cannot show the Facebook post actually harmed Plaintiff's business.  The summary judgment record provides

---

the work."  17 U.S.C. § 412.  It is undisputed that Plaintiff registered the Image outside the three month period.

sufficient evidence that Defendants have indeed made a false or misleading statement about their salt's origin, which is a violation of the Lanham Act.  <u>See</u> 15 U.S.C. § 1125(a)(1)(B).  Therefore, Defendants' motion for summary judgment on Count II of the complaint must be denied.  As with Count I, discovery on damages may proceed on this claim.

    C.  <u>Counterclaim</u>

    Defendants' counterclaim brings claims under the Lanham Act and common law.  The counterclaim alleges that Plaintiff engaged in trademark infringement (Count I), trade dress infringement (Count II), unfair competition (Count III), false designation of origin (Count IV), and false advertising (Count V).

    Defendants sell their pink salt products under the brand name "HIMALANIA."  They hold a standard character (block letter) trademark registration for the word "HIMALANIA" (the "Mark"), but only covering goods from the fruits and snacks classes (International Classes 29, 31, and 32).  For reasons that are not clear, Defendants' mark does not cover salt and salt-related products (International

Class 30), which are the subject of this litigation.
Plaintiff, for its part, sells products under the brand name
"HimalaSalt," but does not have a trademark registration.

The Lanham Act provides protection against the use of
"any word, term, name, symbol, or device" that "is likely to
cause confusion, or to cause mistake, or to deceive" as to
the source of a product.  15 U.S.C. § 1125(a)(1)(A).  "The
Lanham Act extends protection not only to words and symbols,
but also to 'trade dress,' defined as 'the design and
appearance of a product together with the elements making up
the overall image that serves to identify the product
presented to the consumer.'"  Yankee Candle, 259 F.3d at 38
(quoting Chrysler Corp. v. Silva, 118 F.3d 56, 58 (1st Cir.
1997)).

As a preliminary matter, Plaintiff asserts an
affirmative defense of laches against all five counts.
Plaintiff points out that Defendants have known since 2006
(when Plaintiff entered the pink salt market) that
Plaintiff's HimalaSalt was competing with Defendants'
HIMALANIA product, but they failed to pursue legal action
until 2014.  According to Plaintiff, Defendants simply

waited too long to assert their rights, and Plaintiffs are therefore entitled to summary judgment.  Defendants respond that they needed time to assess whether to pursue their claims, and that they were forced to assert their claims when the filing of the Amended Complaint triggered their obligation to raise their claims as a compulsory counterclaim.

To succeed in asserting its laches defense, Plaintiff "must prove by a preponderance of the evidence (1) that [Defendants] inexcusably and unreasonably delayed in bringing this action; and (2) that the delay has prejudiced [Plaintiff]." Lotus Dev. Corp. v. Paperback Software Intn'l, 740 F. Supp. 37, 82 (D. Mass. 1990).  On the question of improper delay, the record is not sufficiently strong to justify summary judgment for Plaintiff. Defendants' argument that they were justified in taking a wait-and-see approach to assess market conditions before suing, as well as the fact that they were required to assert the counterclaim by the commencement of suit by Plaintiff, undercut Plaintiff's laches argument.  As a matter of law, Plaintiff has not carried its burden on this defense.

7

As an alternative to its laches argument, Plaintiff contends that the record will not substantively support a trademark infringement claim under the Lanham Act as offered in Count I.  The record, Plaintiff argues, simply does not contain sufficient evidence of likely confusion, an essential element of a Lanham Act claim.  See Boston Duck Tours, LP v. Super Duck Tours, LLC, 531 F.3d 1, 34 (1st Cir. 2008).  Various factors are relevant to the assessment of the likelihood of confusion.  See, e.g. Pignons S.A. de Mecanique de Precision v. Polaroid Corp., 657 F.2d 482, 487 (1st Cir. 1981) (listing eight factors to weigh in determining likelihood of confusion, including the similarity of the marks, similarity of the goods, the relationship between the parties, and evidence of confusion).  Courts should focus on those factors that are helpful on the particular facts of a case, because "[t]hese factors are not to be applied mechanically."  Beacon Mut. Ins. Co. v. OneBeacon Ins. Group, 376 F.3d 8, 15 (1st Cir. 2004).  Here, where Defendants assert a likelihood of confusion based on the similarity of the marks, the analysis "must be determined by comparing the total effect of each

8

mark, not their separate parts." <u>Boston Duck Tours</u>, 531
F.3d at 34.

In weighing the effect of the marks, a widely used
term, particularly a geographically descriptive term like
"Himala," is accorded much less weight than an arbitrary
word.  <u>See id.</u> (noting that "duck tours" is commonly
understood to mean an amphibious sightseeing excursion and,
therefore, should not be considered as a dominant part of
the mark); <u>In re Joint-Stock Co. Baik</u>, 80 U.S.P.Q. 2d 1305
at *4-6 (TTAB 2006) (rejecting applicant's attempt to
trademark Baikalskaya for its vodka because the reference to
Lake Baikal was primarily geographically descriptive).
Here, because the only overlap between the parties' marks is
the geographical reference to the Himalayan mountains, this
common feature is not likely to lead to confusion.  Indeed,
the summary judgment record contains evidence of numerous
third parties that have registered trademarks covering
products with the common root "Himala," making it even less
likely that there will be confusion.

Finally, Defendants' Mark covers fruit and fruit based
products, which are in an entirely different class of goods

from salt.  It is therefore very uncertain whether Defendants' salt product packaging would be protected by the Mark.  Based on this, it is clear as a matter of law that Defendants cannot show a sufficient likelihood of confusion between HIMALANIA and HimalaSalt to support Count I of their counterclaim.  Plaintiff's motion on this count will therefore be granted.

Plaintiff's motion for summary judgment, on the other hand, must be denied as to Counts II, III, and IV of the counterclaim.  Disputed issues regarding the similarity between the overall commercial image of the products require assessment by the factfinder.  For example, resolution of these counts involves a determination whether the packaging is "confusingly similar," or whether recent changes to Defendants' packaging amount to abandonment of the registered mark.  See Jack Wolfskin Ausrustung Fur Draussen GmbH & Co. KGAA v. New Millennium Sports, S.L.U., 797 F.3d 1363, 1368-69 (Fed. Cir. 2015) (noting a dispute over whether the new form of the mark "create[s] the same, continuous commercial impression" as the old form of the mark).  Such factual issues must be resolved by a jury.

On Count V of Defendants' counterclaim for false
advertising, Plaintiff is entitled to summary judgment.  In
Count V, Defendants allege that Plaintiff's tagline, "the
purest salt on earth," is literally false and has a strong
tendency to mislead the public into believing that
Plaintiff's salt is purer than competing brands.  See 15
U.S.C. § 1125(a).  According to Defendants, the word
"purest" may only describe a level of quality that must be,
and in this case is not, supported by objective testing.
Plaintiff responds that the word "purest" is, at worst, mere
puffery -- a vague statement of quality that is neither
intended to be technically verifiable, nor likely to be
understood as such.

    "A plaintiff can succeed on a false advertising claim
by proving either that an advertisement is false on its face
or that the advertisement is literally true or ambiguous but
likely to mislead and confuse consumers."  Clorox Co. Puerto
Rico v. Proctor & Gamble Commercial Co., 228 F.3d 24, 33
(1st Cir. 2000).  When claims are merely directed at
"exaggerated advertising or unspecified boasting,
characterized by vague and subjective statements," it is

possible to weed them out before trial.  Bern Unlimited,
Inc. v. Burton Corp., 25 F. Supp. 3d 170, 182 (D. Mass.
2014) (quotation omitted).  Defendants' objection, as set
forth in Count V of their counterclaim to Plaintiff's use of
the descriptor "purest," falls in this category.  It is a
mere marketing boast.  Plaintiff's motion for summary
judgment on Count V of Defendants' counterclaim will
therefore be allowed.

    D.  Injunctive Relief

        Finally, Defendants seek summary judgment with regard
to Plaintiff's request for injunctive relief set forth as
part of Counts I and II.  Defendants argue that an
injunction is unwarranted here because Defendants' use of
the Altered Image ceased in May 2012, and Defendants have
pledged to make no future use of it.  Likewise, Defendants
contend they updated their marketing through Facebook and
the internet and no longer suggest that their pink salt is
from either Tibet or Nepal.  Defendants therefore contend
that Plaintiff cannot show any potential harm sufficient to
invoke the court's equitable power.

It is true, as Plaintiff points out, that some hypothetical possibility exists of some further use of the Altered Image, or resumed claim of Tibetan origin for Defendants' salt.  This, however, is not enough to justify an injunction.  Here, the almost absurdly egregious nature of the copying makes repetition of the problem virtually inconceivable.  As a matter of law no adequate basis exists at this time to support injunctive relief in Counts I and II.

### III. SCHEDULING MATTERS

At the end of the hearing, the parties and the court addressed a schedule for the final stage of this litigation. Based on counsel's representations, the court orders as follows:

On or before <u>June 24, 2016</u>, the parties will report back to the court in writing regarding their attempts at an agreed resolution of this dispute.  The report will be drafted by Plaintiff's counsel, but will be the product of joint discussion.  Given the nature of this dispute and the uncertain basis for damages, the court urges the parties to make particularly scrupulous efforts at settlement.

13

Nonetheless, if efforts at resolution are unsuccessful, then expert discovery shall begin.

On or before August 24, 2016, the party with the burden of proof on a claim shall serve its expert report.

On or before September 23, 2016, the party without the burden of proof on a claim shall serve its expert report.

On or before October 24, 2016, expert depositions shall be complete.

If Defendants determine that they need to re-depose any of Plaintiff's fact witnesses as expert witnesses, then either the parties will coordinate this, or, if no agreement can be reached, then Defendants shall file a motion for further discovery on or before September 30, 2016.

On or before October 31, 2016, the parties shall file with the court a joint submission suggesting a schedule for filing further motions for summary judgment or, if none is contemplated, a date for a final pre-trial conference.

## IV. CONCLUSION

To summarize, Defendants' motion for summary judgment (Dkt. No. 112) is hereby ALLOWED as to Plaintiff's claims for injunctive relief regarding Counts I and II, and ALLOWED

14

as to statutory damages and attorney's fees regarding Count
I.  Defendants' motion is otherwise DENIED.

Plaintiff's motion for summary judgment (Dkt. No. 114)
is ALLOWED as to liability on Count I, is ALLOWED as to
Count I and Count V of the counterclaim, and is DENIED as to
Counts II, III, and IV of the counterclaim.

Further proceedings will unfold in accordance with the
agreed schedule.

It is So Ordered.

/s/ Michael A. Ponsor
MICHAEL A. PONSOR
U. S. District Judge